WILLIAM C. BERNHARDT, Appellant, v. JAMES J. LONG and WALTER KOSEL.—No. 40533.

JOHN L. WILSON, Appellant, v. L. A. YOUNG.—No. 40534.

LOUIS LARKIN, Appellant, v. JAMES J. LONG and WALTER KOSEL.— No. 40535.

MARK ENGLEDOW, Appellant, v. ELIZABETH HENTCHER and GEORGE KRODINGER.—No. 40536.

JOHN COLE, Appellant, v. ELIZABETH HENTCHER and GEORGE KRODINGER.—No. 40537.—209 S. W. (2d) 112.

Division One, February 9, 1948.

Rehearing Denied, March 8, 1948.

*Samuel Richeson* for appellants.

*J. W. Thurman* for respondents.

[113] BRADLEY, C.—These five cases are election contests of school directors in Consolidated School District No. 5 of Jefferson County. The cases were filed separately below and separately appealed, but were consolidated [114] below and here. The contestees (respondents) in each case filed motion to dismiss. The five contests were based on same alleged facts, except names of parties, and there was a stipulation that the judgment in what is case No. 40,533 here would be the judgment in the other four cases. The trial court sustained the motion to dismiss in No. 40,533, and that case and the four others were dismissed and these appeals followed. The appeals were properly to the supreme court because "the title to an office under this state" is involved. Const. Art. V, Sec. 3; State ex rel. Worsham v. Ellis et al., 329 Mo. 124, 44 S. W. (2d) 129.

The motion to dismiss was based on these grounds: (1) That the notice of contest does not set forth facts constituting grounds of contest; (2) that said notice does not contain substantive averments of contest as required under the law; and (3) that said notice is insufficient in law to constitute the contest required under the Constitution and statutes of this state.

The notice of contest takes the place of the petition in the ordinary suit. Messick v. Grainger, 356 Mo. 1227, 205 S. W. (2d) 739, l. c. 741, and cases there cited.

The notice of contest alleges: That Consolidated School District Number 5, Jefferson County, was duly organized; that the board of directors called the annual school election in said district to be held at the McGehan school house in the district on April 1, 1947, from 7 A. M. to 6 P. M. for the purpose of electing school directors and voting on a levy, and that the board appointed three judges (naming them)

for said election; that the secretary of the board, William C. Bernhardt, posted notice of said election in five public places in the district 15 days prior to the date of the election; that the secretary of the board, at public expense, prepared the official ballots, poll books, and talley sheets and delivered these to the judges of said election before 7 A. M. April 1, 1947; that the official ballot was published by the secretary by posting copy thereof in five public places in the district 7 days before the election; that the judges of the election appointed two clerks; that the judges and clerks held said election at the Mc-Gehan school house April 1, 1947, between the hours of 7 A. M. and 6 P. M.

That prior to the election James J. Long, Walter Kosel, L. A. Young, C. H. Stegelmeyer and others unknown, in order to raise money for the school election purposes, associated together under the name of Community Improvement Association; that Long and Kosel (contestees) cooperated in raising money to be used in furtherance of their election as school directors and to defeat Bernhardt; that said Association, with Long and Kosel, prepared and printed a large number of ballots similar in appearance to the official ballot and caused said simulated ballots to be "by force and fraud" placed in the hands of the judges and clerks of said election and by these given out to the voters at the election; that the simulated ballots were mistaken for and voted by a large number of voters as the official ballots and were by the judges counted along with the official ballots cast; that the count of the *official* ballots cast gave a total of 80 votes for Bernhardt (contestant) for director "and none for any other opposing candidate"; that the judges of said election "by reason of fear of bodily harm" did not certify to the secretary of the school board "the total vote of the official ballots" cast for Bernhardt; that the judges were prevented "by fear and intimidation" on the part of Long and Kosel and their associates from removing the simulated ballots from the polling place and from the hands of the voters or from the ballot boxes.

That Long and Kosel and their associates intimidated the election officials; "created a disturbance of the peace in the election place; kept the polls from functioning for long periods of time; caused voters to be scared away from the polls; caused a letter to be written to the judges by the prosecuting attorney, and delivered to the judges during the election for the purpose of bringing pressure on the election officials and to cause said officials to "accept as genuine" the simulated ballots which had fraudulently thereon "official ballot"; caused the sheriff to appear at the election place with a bundle of the simulated ballots "and to force the use thereof" by the election officials; caused [115] the solicitation of votes for them (Long and Kosel) "at the very doors of the polling place"; that 230 of said simulated ballots were cast and counted; that contestant is qualified for school director (qualifications set out) and that if the simulated ballots are eliminated

contestees "received no votes for the office of school director."

What is termed the official ballot and the simulated ballot are set out in the notice of contest. So far as pertinent here these follow:

(Alleged Official Ballot)

Consolidated District No. 5
Jefferson County, Mo.

Official Ballot

Annual Election
McGehan Schoolhouse
April 1, 1947

PROPOSITION: To elect six directors; two for one year terms; two for two year terms; and two for three year terms.

For One Year Term
(vote for two)

JOHN KRODINGER
JOHN L. WILSON

For Two Year Term
(vote for two)

MARK ENGLEDOW
JOHN COLE

For Three Year Term
(vote for two)

LOUIS LARKIN
Wm. C. BERNHARDT

(Alleged Simulated Ballot)

Consolidated District No. 5
Jefferson County, Mo.

Official Ballot

Annual Election
McGehan Schoolhouse
April 1, 1947

PROPOSITION: To elect six directors; two for one year terms; two for two year terms; and two for three year terms.

For One Year Term
(vote for two)

JOHN KRODINGER
L. A. YOUNG
JOHN L. WILSON
C. H. STEGELMEYER

For Two Year Terms
(vote for two)

MARK ENGLEDOW
ELIZABETH HENCHER
JOHN COLE
GEORGE KRODINGER

For Three Year Term
(vote for two)

LOUIS LARKIN
JAS. J. LONG
Wm. C. BERNHARDT
WALTER KOSEL

Identical instructions on how to vote were on the alleged official and simulated ballots. It will not be necessary to set out these instructions. Article 8, chapter 76, R. S. 1939, relating to election contests, was repealed and reenacted in 1945. Laws 1945, p. 887. Sec. 2 of the new act, among other things, provides that no election of a school director shall be contested unless notice of such contest be given as therein provided, and that "the notice shall specify the grounds upon which the contestant intends [116] to rely, and if any objection be made to the qualifications of any voters, the names of such voters and the objections shall be stated therein." No complaint is made on the qualifications of any of the voters who voted at the school election concerned, hence it stands conceded that those who voted the 230 alleged simulated ballots were qualified voters of the school district.

There is no allegation that any money that contestees cooperated in raising was *used* for *any* purpose. Without stating the facts constituting the alleged force and fraud, it is a mere conclusion to say that the contestees "by force and fraud" placed the alleged simulated ballots in the hands of the judges. And it is a mere conclusion to say that the judges "by reason of fear of bodily harm" did not separately certify to the secretary of the school board the total vote on the alleged official ballot. And in the same category fall the allegations of intimidation of the judges by the contestees. No facts are alleged as constituting the cause for intimidation. The contents of the letter by the prosecuting attorney, which is charged to have been written for the purpose of bringing pressure on the election officials to accept the alleged simulated ballots are not set out. The allegations as to the letter would imply that its contents had an undue influence on the judges of the election and caused them to wrongfully accept the alleged simulated ballots. Without the contents of the letter or the substance thereof the allegation is no more than a conclusion. And the same is true as to the allegation that the sheriff appeared at the election with a bundle of the alleged simulated ballots and forced "the use thereof." As to what the sheriff did to constitute the force is not alleged. The allegation that the contestees caused the solicitation of votes for themselves "at the very doors of the polling place" alleges a fact. If such was done the offender might be subject to punishment (Sec. 4374 R. S. 1939), but counsel cite no authority and we find none that such would invalidate the election of contestees. "As a general rule (in the absence of fraud), an election will not be annulled even if certain provisions of the law regarding elections have not been strictly followed." Armantrout v. Bohon, 349 Mo. 667, 162 S. W. (2d) 867, l. c. 871.

It is not necessary to discuss at length the law as to pleading conclusions. The motion to dismiss under the new civil code, Sec. 62, Laws 1943, p. 375, takes the place of the demurrer under the former

practice. It is well known that a demurrer did not admit conclusions as true. Jewel Realty Co. v. Dierks et al., 322 Mo. 1064, 18 S. W. (2d) 1043; Remington et al. v. Flemington School District et al. (Mo. Sup.), 22 S. W. (2d) 800; Mack et al. v. Eyssell, 332 Mo. 671, 59 S. W. (2d). 1049. So it would appear that unless there is some merit in the allegations as to the alleged simulated ballot, contestants must fail.

We now take up the charges on the alleged simulated ballot. The allegations setting out the two ballots, etc. were added as an amendment by interlineation at the hearing on the motion to dismiss. With commendable frankness contestants in the brief say that "the principal issue on appeal is as to the right of private parties to supplant the official ballots provided by the school board at public expense with ballots printed at private expense by private parties and containing names of candidates not officially listed on the official ballot prepared by the board of education and it secretary."

All section numbers of R. S. 1939 referred to herein have the same section numbers in Mo. R. S. A. Sec. 10483, a part of article 5, chapter 72, prescribes the time, manner, rules, etc. pertinent to the election held in the school district concerned here. This section was amended in 1943, Laws 1943, p. 885, by inserting a new proviso, but the inserted proviso is not pertinent here.

So far as pertinent here Sec. 10483 is as follows: "The qualified voters of such . . . consolidated school district shall vote by ballot upon all questions provided by law for submission at the annual school meetings, and such election shall be held on the first Tuesday in April of each year, and at such convenient place or places [117] within the district as the board may designate, beginning at 7 o'clock A. M. and closing at 6 o'clock P. M. of said day. The board shall appoint three judges of election for each voting place, and said judges shall appoint two clerks; said judges and clerks shall be sworn and the election otherwise conducted in the same manner as the elections for state and county officers and the result thereof certified by the judges and clerks to the secretary of the board of education, who shall record the same, and, by order of said board, shall issue certificates of election to the persons entitled thereto; and the results of all other propositions submitted must be reported to the secretary of the board, and by him duly entered upon the district records. All propositions submitted at said annual meeting may be voted for upon one and the same ballot, and necessary poll books shall be made out and furnished by the secretary of the board . . ."

It will be noted that Sec. 10483 provides that the "necessary poll books shall be made out and furnished by the secretary of the board", but there is no provision that the board or secretary shall make out or furnish the ballots or print the name of any candidate thereon, or publish the ballot. Also, it will be noted that the section says that "all propositions submitted at said annual meeting *may* be (not shall be)

voted for upon one and the same ballot'' (italics ours). The names of contestants were printed on the alleged simulated ballot, hence no voter who voted that ballot was in any way *tricked* into voting against contestants. It will be noted from the ballot forms, supra, there were two blank lines under the names of each set of candidates on the ballot furnished by the board and on the alleged simulated ballot, and one of the instructions on each ballot was: ''If the voter desires to vote for candidates whose names do not appear on the printed ballot he may do so by drawing a line through the printed name of candidate for such office and writing below such cancelled name the name of the person for whom he desires to vote, and placing a cross mark (x) in the square at the left of such name.'' We might say that neither of the ballots as they appear in the record has the *square*.

The only deception that could be attributed to the alleged simulated ballot is that it contained thereon the words ''official ballot.'' Since the law does not require the board or secretary to furnish the ballots, the ballot prepared and furnished by the board had no *official* attribute except that it was *furnished* by the board. In Armantrout v. Bohon, supra, it is ruled that the facts, to be sufficient to nullify the result of a school election, must show a violation of some mandatory statute or such other conduct as usually invalidates an election. There is no mandatory statute or any statute requiring the school board of Consolidated District No. 5 to furnish the ballots for the school election, and if ballots are furnished by the board, there is no such statute or any statute requiring the exclusive use thereof.

Contestants make reference to Secs. 11593, 11594, 10328, 10466, 10508, 10681, and 10689 R. S. 1939, and say that these statutes are in pari materia with Sec. 10483, supra, and should point the way. Secs. 11593 and 11594 follow: Sec. 11593: ''All ballots cast in elections for public officers within this state shall be printed and distributed at public expense, as hereinafter provided. The printing of the ballots and of the cards of instruction for the electors in each county, and the delivery of the same to the election officers, as provided in section 11598, shall be a county charge, except where the officers to be voted for are exclusively city officers, in which case such printing and delivery shall be a city charge, the payment of which shall be provided for in the same manner as the payment of other county or city expenses.''

Sec. 11594: ''Except as in this article otherwise provided, it shall be the duty of the clerk of the county court of each county to provide printed ballots for every election for public officers in which the electors or any of the electors within his county participate, and to cause to be printed in the appropriate ballot the name of every candidate whose name has been certified to or filed with him in the manner [118] provided for in this article. Ballots other than those printed by

the respective clerks of the county courts according to the provisions of this article shall not be cast or counted in any election.''

The office of school director is an ''office under this state'' for jurisdictional purposes under Art. V, Sec. 3, Const. State ex rel. Worsham v. Ellis et al., supra. Therefore, school directors are public officers, but it is clear, we think, that the term *public officers* in Sec. 11593 has no reference to school directors. The phrase in pari materia means upon the same subject matter. Black's Law Dictionary. In view of the subject matter of the article in which Secs. 11593 and 11594 are a part, these sections are not in pari materia with Sec. 10483, besides, it is provided in Sec. 11629, in the same article, that the article does not apply to school elections.

Sec. 10328 relates to bond elections in school districts, but makes no reference as to who shall prepare or furnish the ballots. Sec. 10466 relates to the organization of a town or city school district, and provides, among other things, that the ''ballot shall contain the names of candidates for membership on the new board of education.'' The section does not say who shall prepare the ballot. Sec. 10508 relates to the qualifications, election, and term of directors of consolidated high school districts in counties of more than 200,000 inhabitants. This section says that ''all propositions submitted at said annual meeting may be voted for upon one and the same ballot, and necessary poll books shall be made out and furnished by the secretary of the board.'' There is no direction as to who shall furnish the ballot. Sec. 10681, amended in 1941, Laws 1941, p. 542, relates to the election of school directors in school districts in cities of 75,000 and less than 500,000 inhabitants. This section provides that the qualified voters of such school district shall vote by ballot for school directors and that poll books shall be furnished, but the section is silent on who is to furnish the ballots. Sec. 10689 is in the same article as Sec. 10681, and relates to special elections in such school districts. There is nothing in that section that aids contestants. Assuming, without deciding, that the mentioned sections, except 11593, 11594 are in pari materia with Sec. 10383, there is nothing in either of said sections to aid contestants.

On the proposition that the use of the alleged simulated. ballot invalidated the election of the contestees, contestants cite: Gaston et al. v. Lamkin et al., 115 Mo. 20, 21 S. W. 1100; Bradley v. Cox, 271 Mo. 438, 197 S. W. 88; Rollins v. McKinney, 157 Mo. 656, 57 S. W. 1027; Bowers v. Smith, 111 Mo. 45, 20 S. W. 101. It will not be necessary to review these cases. They do not support the contention of contestants as to the effect of the use of the alleged simulated ballots. We might say that the Bowers case was overruled in McKay v. Minner, 154 Mo. 608, l. c. 617, 55 S. W. 866, and that the McKay case was in turn overruled in Gass v. Evans, 244 Mo. 329, l. c. 354, 149 S. W. 628.

436

The judgment of dismissal in each of the five cases should be affirmed. It is so ordered. *Dalton* and *Van Osdol, CC.*, concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur.